UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JEFFREY BROWN,

        Plaintiff,              Case No. 2:14-cv-122

v.                                   Honorable R. Allan Edgar

DENNIS BROOKS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.       Factual allegations

Plaintiff Jeffrey Brown presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF). He sues MDOC Deputy Director Dennis Straub and MDOC Regional Prison Administrator Jeri-Ann Sherry, together with the following URF employees: Dennis Brooks; former Warden McQuiggin; Assistant Resident Unit Supervisor (ARUS) Jeffrey Clark; Resident Unit Manager (RUM) (unknown) Bailey; former Deputy Warden Duncan MacLaren; Assistant Deputy Wardens (ADWs) Cecil Daly, Connie Horton, and (unknown) Nadeau; and Assistant Business Manager Edson Forrester.

    Plaintiff was elected to the Warden's Forum at URF. At a meeting of the Warden's Forum held on April 20, 2011, Plaintiff and another prisoner member of the forum voted against recommending a $500.00 expenditure from the Prisoner Benefit Fund for a volunteer banquet. Both staff members of the forum, Defendants Forrester and Horton, voted to recommend the expenditure. Plaintiff alleges that, under the MICH. DEP'T OF CORR., Policy Directive 04.02.110 ¶ G, a recommendation to approve an expenditure cannot be made unless supported by a majority, not a tie, of the vote. On April 29, 2011, Petitioner was asked to sign-off on minutes that indicated the funds had been taken by Defendant McQuiggin for the expenditure. Petitioner refused, and he notified McQuiggin and others about the problem by way of a memo.[1] Sometime after April 29, 2011, Defendant Brooks threatened Plaintiff with "'some bad stuff' in my future if I didn't get in line

---

[1]Plaintiff has included the memo as the first attachment to his complaint. (*See* Attach. to Pet., docket #1-1, Page ID##10-11.) The memo describes a number of alleged violations of MDOC policy on expenditures, which Plaintiff believed resulted from a "misunderstanding" that could "be easily resolved" by way of an emergency meeting of the Prison Benefit Committee. (*Id.*) In the memo, Plaintiff complained about the decision to expend money on the annual volunteer banquet, with which he disagreed, and on the renewal of the Prison Legal News subscription. He also complained about the methods used to "mak[e] adjustments to the PBF's Advisory Budget." (*Id.*)

with the program and I needed to quit being 'a pain in the ass' and 'quit making [him] and [Ken] Searles look bad.'" (Compl., docket #1, Page ID#5.)

Plaintiff alleges that, despite his complaints and the violation of the MDOC rules, the money was not returned to the Prisoner Benefit Fund. Plaintiff thereafter forwarded copies of his April 29, 2011 memo to Defendants MacLaren, Daly, Horton, Nadeau, Clark, Bailey, Sherry and Straub, as well as the Michigan Attorney General's Office, the Michigan Treasurer, the Director of the Michigan State Police, and every prisoner on the URF Warden's Forum. On June 1, 2011, Plaintiff was summoned to the Programs Building, where he was informed by other members of the forum that they had heard Defendant Brooks talk about Plaintiff being sent some place he would not like. Plaintiff asked Defendant Clark if he was being transferred. Clark told Plaintiff that it was out of his hands, that he had to work at URF, and that there was nothing he could do. Defendant Clark told Plaintiff that he "shouldn't have pissed off so many people." (*Id.*, Page ID#6.)

On June 2, 2011, Plaintiff was transferred to Newberry Correctional Facility (NCF). Plaintiff alleges that NCF is "a very cold and wild prison which has open cubes (instead of 2-men rooms) and is known as the theft capitol of the system." (*Id.*) When he arrived at the prison, Plaintiff refused to "accept a lock," and instead remained seated outside the control center for 24 hours, after which he was placed in segregation and issued a misconduct ticket, on which he ultimately was found guilty and lost good-time. (*Id.*) Plaintiff later was transferred to the Alger Maximum Correctional Facility (LMF), where he was told that he "deserved to be stuck there with its 75% 'niggers' who would probably 'rape and rob' me." (*Id.*) Plaintiff alleges that most staff at LMF appeared to be aware of the situation at URF, and they allegedly harassed him.

Plaintiff was transferred back to URF nearly three years later. When he arrived, he inspected his property and found that the typewriter no longer worked, though it was working prior to transfer. Because it did not work, Plaintiff's typewriter was confiscated. He contends that it was broken by the MDOC at either LMF or URF in retaliation for his conduct three years before.

Plaintiff alleges that Defendant Brooks threatened him with "bad stuff" if he did not "conform," and he alleges that Defendant McQuiggin directed Brooks to make the threat. Plaintiff alleges that Defendant Clark prepared Plaintiff's transfer screen with full knowledge of what had happened. Plaintiff claims that Defendant Bailey reviewed and approved his transfer with knowledge of the events. He claims that Defendant ADWs MacLaren, Daly, Horton and Nadeau had been notified by memo of the problem and that MacLaren approved the unfavorable lateral transfer. Defendant Straub also approved the transfer. Plaintiff claims that the speed with which the transfer process was completed was atypical. Plaintiff also claims that Defendant Forrester, as Assistant Business Manager, failed to stop the misappropriation of prisoner funds and failed to intervene in the retaliatory transfer. In addition, he complains that Defendant Sherry, who was the MDOC regional administrator who supervised McQuiggin, failed to act to prevent the retaliatory transfer.

Plaintiff asserts that, as the result of the retaliatory transfer, he lost his position on the Warden's Forum and his responsibilities to oversee the Prisoner Benefit Fund. He contends that his subsequent conviction on a Class I misconduct at NCF was the result of retaliation, as were all subsequent transfers and harassment experienced at other facilities. He also alleges that Defendants Brooks, McQuiggin, Clark, Bailey, MacLaren and Straub also informed staff at NCF and LMF about Plaintiff's conduct in exposing corruption at URF. In addition, Plaintiff contends that his typewriter

was damaged by an unknown person in retaliation for his acts, some three years after the initial events.

Plaintiff seeks injunctive relief in the form of a transfer out of the prison region, as well as compensatory damages.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Supervisory Liability

Plaintiff's only allegations against Defendants Daly, Horton, Nadeau, and Forrester are that they received copies of his memo describing alleged misapplications of policy but failed to correct them or to intervene in the purportedly retaliatory transfer authorized by others.  In addition, he alleges only that Defendant Sherry had supervisory authority over Defendant McQuiggin and should have prevented him from retaliating.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may

not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Daly, Horton, Nadeau, Forrester and Sherry engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Retaliation

Plaintiff alleges that the remaining six Defendants retaliated against him by participating in his retaliatory transfer from URF to NCF, making threatening statements, and causing additional hardship to Plaintiff over the next three years. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1. Transfer and loss of Warden's Forum position

Although it is far from clear, the Court will assume without deciding that Plaintiff's challenges to disbursements from the Prison Benefit Fund were protected conduct. *But see Griffin*

*v. Berghuis*, No. 12-2363, 2014 WL 1560844, at **4-8 (6th Cir. Apr. 21, 2014) (holding that a letter sent by a Warden's Forum representative prisoner to the regional prison administrator was not protected conduct under either the Speech or Petition Clauses, as understood in the prison context) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)); *see also Vandiver v. Martin*, 48 F. App'x 517, 519-20 (6th Cir. 2002) (outspoken participation in the Warden's Forum was not protected conduct, and transfer to another unit and loss of position was not adverse action).

Plaintiff, however, fails to meet the second prong of the retaliation test, whether he has been subjected to conduct that is sufficiently adverse to amount to a First Amendment violation. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the

prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill v. Lappin*, 630 F.3d 468, 468 (6th Cir. 2010).

According to the complaint and its attachments, Petitioner was housed in Level II custody at URF, and he was transferred to Level II custody at NCF. URF and NCF are located within the same general geographical area (the Upper Peninsula of Michigan), and Plaintiff does not allege that the transfer interfered with any pending litigation. While Petitioner may have viewed NCF as a less desirable facility and may have disliked the housing layout at NCF, those differences would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, the Sixth Circuit never has concluded that the loss of a position on the Warden's Forum resulting from a transfer is sufficiently adverse to support a retaliation claim. Indeed, in a recent unpublished decision, the court found that it was not clearly established that removal from the Warden's Forum followed by immediate transfer from the general population of one facility to the general population of another facility would constitute adverse action. *Griffin*, 2014 WL 1560844, at **9-10.

2. Threatening remarks

Plaintiff alleges that Defendant Brooks made threatening remarks to the effect that Plaintiff would experience "bad stuff" if he did not get in line and quit making officers look bad. (Compl., docket #1, Page ID#3.) A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, many

threats or deprivations are so *de minimis* or general that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Here, Brooks made no specific threats; he merely made a general threat that unspecified "bad stuff" could happen if Plaintiff did not quit complaining. Without more and in the circumstances of the case (suggesting transfer as the ultimate threat), Brooks' alleged threat was not the sort of remark that could deter a person of ordinary firmness from pursuing his legal rights.

### 3. Other retaliatory action

Plaintiff alleges that he experienced adverse action after he was was transferred to NCF, LMF, and back to NCF three years later. First, Plaintiff complains that NCF officials (none of whom are Defendants) issued a misconduct ticket against him shortly after he arrived at the facility. Second, he alleges that he experienced other, unidentified retaliatory harassment over the next three years. Third, he alleges that his typewriter was damaged by some LMF or URF employee during the course of his 2014 transfer back to URF.

Plaintiff's allegations are wholly conclusory and fail to state a retaliation claim on any of these grounds. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. With respect to the misconduct ticket, Plaintiff fails entirely to allege facts warranting a conclusion that any Defendant's retaliatory motive was causally connected to the misconduct ticket. Indeed, Plaintiff acknowledges in his complaint that he was issued a misconduct ticket because he failed to follow a direct order to lock up in his cell. Plaintiff's conduct in disobeying a direct order, not any possible retaliatory motive of a Defendant who was miles away from NCF, was the undisputed reason for the issuance of a misconduct ticket.

To the extent that Plaintiff complains of unidentified forms of harassment at NCF and LMF, he fails to allege either what specific harassment he experienced or how it was connected to any URF Defendant. The mere fact that some NCF or LMF prison officials may have been aware of his complaints at URF fails entirely to demonstrate either that those unidentified officials were acting on behalf of any URF Defendant who may have had a retaliatory motive or that any of those unidentified actions were adverse. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Plaintiff's allegations about his treatment at NCF and LMF fall far short of stating a retaliation claim against any URF Defendant. *See* FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Finally, Plaintiff's allegation that some unidentified LMF or URF official broke his typewriter in retaliation for his protected conduct three years earlier is wholly frivolous. The Sixth Circuit has recognized that, in some narrow circumstances, close temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Here, Plaintiff does not even allege temporal proximity. He merely alleges that he engaged in protected conduct nearly three years before the typewriter was broken. Such an extended passage of time is not proximate, and Plaintiff has alleged no other connection between the breakage of his typewriter and his protected conduct.

For all these reasons, Plaintiff fails to state a retaliation claim based on action taken at NCF and LMF.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     7/21/2014              */s/ R. Allan Edgar*
                                  R. ALLAN EDGAR
                                  UNITED STATES DISTRICT JUDGE